UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DESHAWNRA L. WILLIAMS o/b/o D.A.H.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

DECISION & ORDER
18-CV-6104

---

## Preliminary Statement

Plaintiff Deshawnra L. Williams on behalf of her son D.A.H. ("plaintiff"), brings this action pursuant to Title II and Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for children's social security insurance benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings.[1] See Docket ## 13, 18.

Plaintiff filed her application for children's social security insurance benefits on August 12, 2014, alleging D.A.H.'s disability due to attention deficit disorder, attention-deficit hyperactivity disorder ("ADHD"), and asthma. Administrative

---

[1] For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

1

Record, Docket # 9 ("AR") at 175-82, 228-33. Her application was initially denied on October 6, 2014, and Administrative Law Judge Lauren Penn ("the ALJ") held a hearing on September 1, 2016, at which plaintiff and D.A.H. testified with the assistance of counsel. AR at 62-99. Board-certified pediatrician William Silberberg, M.D. also testified at the hearing. Id. On November 23, 2016, the ALJ issued an unfavorable decision, finding that D.A.H. was not disabled. AR at 11-28. The Appeals Council denied plaintiff's request for review (AR at 1-7), and this appeal followed. Plaintiff and the Commissioner filed competing motions for judgment on the pleadings. Docket ## 13, 18.

## Discussion

Determining Disability for Children Under the SSA: The Act provides that an individual under the age of eighteen will be deemed disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Further, "no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." Id. at § 1382c(a)(3)(C)(ii).

The determination of disability entails a three-step evaluation process. 20 C.F.R. § 416.924(a).

2

> First, the ALJ considers whether the child is engaged in "substantial gainful activity." Id. at § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments." Id. at § 416.924(c)-(d); Id. at pt. 404, subpt. P.

Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004). Functional limitations are then evaluated in six domains: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being." Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012); see also 20 C.F.R. § 416.926a(b)(1). "A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Frye, 485 F. App'x at 487.

A child has a marked limitation in a domain when the impairment "interferes seriously" with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Marked limitation is "more than moderate but less than extreme." Id. (internal quotation marks omitted). A child has an extreme limitation in a domain when the

3

impairment "interferes very seriously" with the child's "ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(3)(i). Extreme limitation is "more than marked" and is typically given to "the worst limitations," but it does not require "a total lack or loss of ability to function." Id.

The ALJ's Decision: At step one, the ALJ found that D.A.H. had not engaged in substantial gainful activity. AR at 14. Proceeding to step two, the ALJ determined that D.A.H. had the following severe impairments: ADHD combined type, oppositional defiant disorder ("ODD"), asthma, and unspecified disruptive and impulsive control disorder. AR at 14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or functionally equal a Listing impairment. AR at 14-15. Although the ALJ determined that D.A.H. had marked limitations in caring for himself, she found D.A.H. had "less than marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being. AR at 21-27. The ALJ also found that D.A.H. had no limitations in moving and manipulating objects. AR at 24-25. Accordingly, because D.A.H. only had "marked limitations" in one domain of functioning, the ALJ determined that D.A.H. was not disabled within the meaning of the Act.

In making these determinations, the ALJ gave varying degrees of weight to the testimony at the hearing. She gave "great weight"

4

to D.A.H.'s mother's testimony. AR at 18. The ALJ also gave "great weight" to Dr. Silberberg's testimony "regarding severity and listings" but "little weight" to Dr. Silberberg's testimony regarding D.A.H.'s limitation in interacting and relating with others. AR at 18. As to opinion evidence in the record, the ALJ assigned "great weight" to the opinion of consultative examiner Dr. Harbinder Toor and "some weight" to the opinion of psychological consultative examiner Yu-Ying Lin, Ph.D. AR at 19. The ALJ also considered the opinions of D.A.H.'s teachers and school staff by assigning "some weight" to the opinion of Matthew Bradstreet, the Dean of Discovery Charter School where D.A.H. attended, and by assigning "some weight" to the opinion of Greg Kinslow, D.A.H.'s teacher. AR at 19-20. Finally, the ALJ gave the State medical consultant J. Randall, M.D.'s opinion "great weight" except for the assessment of D.A.H.'s ability to care for himself, which the ALJ assigned "little weight." AR at 20.

<u>Interacting and Relating with Others</u>: Plaintiff argues that the ALJ's finding that D.A.H. had a less than marked limitation in interacting and relating with others was not supported by substantial evidence. I agree. Indeed, the record evidence supporting the conclusion that D.A.H. has a marked limitation in interacting and relating with others is so substantial, it compels a finding that plaintiff is disabled.

According to the Commissioner's regulations, a child may have

5

a marked limitation in interacting and relating with others when he, for example, does not reach out to be picked up and held by his caregiver; does not "attach to adults other than parents (e.g., teachers or club leaders)"; has no close friends; avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; has difficulty playing games or sports with rules; or has difficulty communicating with others, e.g., in using verbal and nonverbal skills to express himself, carrying on a conversation, or in asking others for assistance. 20 C.F.R. § 416.926a(i)(3)(i)-(v); AR at 23-24.

The testimony of Dr. William Silberberg was particularly instructive. Dr. Silverberg, a board-certified pediatrician who received his medical degree from Duke and taught at Yale Medical School, was retained by the Commissioner to review the entire record, attend the hearing, and offer expert testimony on whether D.A.H. was disabled. AR at 401-405. Dr. Silberberg acknowledged that he testifies as an expert for the Commissioner in about 300 cases a year and he does not "think anyone can really argue the point – they can argue the point, but I'm not willing to accept it, that this child has marked problems with interacting and relating with others." AR at 94-95. Dr. Silberberg noted that it was "almost unheard of" for a child to be suspended from kindergarten, adding "[a]nd then, to read these disciplinary reports." AR at 94. According to Dr. Silberberg, D.A.H.'s

6

educational records, disciplinary reports, and medical records are "consistent with a child who is having significant problems" and make him "markedly concerned" about D.A.H.'s future without significant and intensive medical intervention. AR at 95. Dr. Silberberg's prognosis for D.A.H.'s future was gloomy: "He is in for a long, difficult road ahead of him." AR at 91.[2]

The records and evidence Dr. Silberberg relied on, and those received after the hearing, certainly support his opinions. For example, D.A.H.'s teacher, Greg Kinslow, who observed the child for at least an entire school year, also documented D.A.H.'s problems in interacting and relating with others. AR at 348. Mr. Kinslow consistently rated D.A.H. as having an "obvious problem"

---

[2] The ALJ afforded "little weight" to Dr. Silberberg's "assessment of the claimant's limitation in interacting and relating with others." AR at 18. The ALJ's reasoning is difficult to unravel. It appears the ALJ dismissed Dr. Silberberg's opinion on this domain because of certain exhibits that were received into the record after Dr. Silberberg's hearing testimony. The Court has examined these exhibits and finds they do not constitute substantial evidence to support the ALJ's decision. For example, the ALJ specifically refers to Exhibit 7F at pages 108 and 136 (AR at 513 and 541) as supporting the finding that D.A.H.'s functioning and behavior recently improved with medication. Page 513 of the AR is a page from D.A.H.'s medical history notes dated March 21, 2016 in which D.A.H.'s mother stated his medication for ADHD "works well in the morning, but worn off by after school time." When D.A.H.'s mother returned to the pediatrician on June 27, 2016 she reported the ADHD medication was now working well throughout the day. AR at 541. However, the notes also confirm that D.A.H.'s mother was unilaterally giving her son a dangerously high dose of the ADHD medication that exceeded the prescribed dosage. The medical record relied on by the ALJ states: "Mom reports that she was giving [D.A.H.] 72 mg of Concerta instead of the prescribed 54 mg. When discussing the safety concerns of this practice, mom states 'well it was fine for me!' Discussed safety concerns with mom who was minimally receptive. Advised mom that a 72 mg dose is not a safe dose for patient and that altering a stimulant medication dose without discussing with a provider can be dangerous. Will refill dose at 54 mg tablets." AR at 542. Relying on an unprescribed and excessive dosage of ADHD medication as proof of the medication's effectiveness in controlling behavior is obviously problematic.

in "seeking attention appropriately," "following rules (classroom, games, sports)," and "introducing and maintaining relevant and appropriate topics of conversation." AR at 348. D.A.H. was also rated as having an obvious problem in activities such as "respecting/obeying adults in authority," "using language appropriate to the situation and listener," "taking turns in a conversation," and "using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation" among others. Mr. Kinslow rated D.A.H. as having a "serious problem" with expressing anger appropriately. Id. Further, according to his school records, D.A.H. frequently fled from school staff and away from adult supervision. AR at 306, 308-10, 316.

D.A.H.'s mother testified that her son threatened to cut his sister with a knife and bit her. AR at 79. According to D.A.H.'s mother and teachers, he had multiple disciplinary incidents resulting from threatening, punching, stabbing, and choking other students. AR at 71, 294, 302, 309, 311, 314, 315, 319. D.A.H.'s mother testified that he would get into trouble at school for "[b]asically, being defiant, the anger issues. He would try to harm other students in many different ways like punching, trying to stab them with a pencil, chairs." AR at 71. D.A.H. told a student, "I'll kill you" because the student was merely calling his name. See AR at 72. D.A.H.'s anger also results in severe destructiveness. His mother testified that when told that he will

8

have his things taken away, D.A.H. will "be kicking the wall or something. Just keep opening the door, slamming the door. . . . He break[s] his own stuff. He break[s] my stuff. He break[s] his sister's stuff." AR at 84.

Matthew Bradstreet, the Dean of D.A.H.'s school, wrote that D.A.H. had 16 disciplinary referrals and had been suspended twice, all in the span of four months, for "insubordination, defiance, and class disruptions." AR at 354. From 2012 to 2014, it appears that D.A.H. had at least 35 disciplinary incidents. AR at 88, 300-01. D.A.H. had been suspended as a kindergartener for "physical aggression" (AR at 88, 294); Dr. Silberberg opined that it was "[m]arkedly unusual to have someone suspended in kindergarten." AR at 88. It was also Dr. Silberberg's opinion that D.A.H. "interacts extremely poorly, markedly poorly with society." AR at 95. The State medical consultant, Dr. J. Randall, who is familiar with disability determinations and their evidentiary requirements, also opined that D.A.H. has marked problems with interacting and relating with others. AR at 179. Despite explicitly stating that this aspect of Dr. Randall's opinion is "supported by the medical and educational evidence of record" and therefore giving it "great weight" (AR at 20), the ALJ never refers to or relies on the opinion when analyzing this domain.

9

In sum, a fair reading of this record, including the opinions of two educational and two medical professionals, confirms the lack of substantial evidence to support the ALJ's conclusion that D.A.H. has a less than marked limitation in interacting and relating with others. D.A.H.'s proclivity for punching, stabbing, and choking other children, to say nothing of his myriad other manifestations of aggression and anger, cannot be dismissed as a mild or transient behavioral issue. D.A.H. has clearly documented longstanding deficits in interacting and relating with others. Because it is clear from the record that D.A.H. has a marked limitation in interacting and relating with others and the ALJ found D.A.H. to have a marked limitation in caring for himself, D.A.H. is markedly limited in at least two domains. Accordingly, D.A.H.'s impairments functionally equal a listed impairment. See Frye, 485 F. App'x at 487; Rice ex rel. T.C.K. v. Astrue, 32 F. Supp. 3d 113, 123-25 (N.D.N.Y. 2012) (remanding for calculation of benefits where ALJ improperly disagreed with treating physician's determination that plaintiff claiming disability for ADHD had marked limitations in interacting and relating with others given that the record "evidence[d] substantial problems with aggression and social interaction. . . . Claimant was disciplined for taking other students' property, fighting, threatening a bus driver, and inappropriate physical contact. The consultative psychiatric examiner noted a history of 'difficulty with social behavior'. .

10

. .") (internal references to the record omitted); <u>Valez ex rel. J.M.A. v. Astrue</u>, No. 10-2681, 2011 WL 1248707, at *6 (E.D. Pa. Feb. 4, 2011) ("Because the ALJ's conclusions that J.M.A.'s limitations in two domains were less than marked are unsupported by substantial evidence, remand is warranted, since a finding of disability would result from a conclusion that J.M.A. had marked limitations in two areas."); <u>see also</u> <u>Brown ex rel. J.B. v. Colvin</u>, No. 1:12-CV-1062 (MAT), 2015 WL 1647094, at *7 (W.D.N.Y. Apr. 14, 2015) (remanding where plaintiff's psychologist noted he "'got suspended from school . . . for picking at an autistic boy[,] throwing things at him and hitting him[]'" but where ALJ found plaintiff had a less than marked limitation in interacting and relating with others (alterations and omissions in original)).

## Conclusion

Based on the record before the Court, I find that remand for further record development and more administrative proceedings, or another hearing, would serve no useful purpose. There is compelling record evidence confirming that D.A.H.'s functioning is markedly limited in the domain of interacting and relating with others. Thus, a finding of disability is appropriate. <u>See</u> <u>Rivera ex rel. S.M.H. v. Colvin</u>, 9 F. Supp. 3d 309, 319-21 (S.D.N.Y. 2014) (finding "[i]n short, there is little evidence in the record to support a determination that S.M.H. had 'less than marked limitation' in interacting and relating with others. . . .

11

[A]lmost every adult who interacted with S.M.H. on a regular basis described her as oppositional, immature, aggressive, and defiant. . . ." and remanding for calculation of benefits); Rice, 32 F. Supp. 3d at 125 (remanding for calculation of benefits where ALJ improperly disagreed with treating physician's determination that plaintiff claiming disability for ADHD had marked limitations in interacting and relating with others given that the record "evidence[d] substantial problems with aggression and social interaction. . . ."); Diaz ex rel. E.G. v. Comm'r of Soc. Sec., No. 06-CV-530-JTC, 2008 WL 821978, at *8-9 (W.D.N.Y. Mar. 26, 2008) ("[T]he evidence contained in E.G.'s school records and the reports of examining and reviewing medical consultants provides persuasive proof of his marked limitation of functioning in the domain of interacting and relating with others. . . . Accordingly, remand is ordered solely for the calculation of benefits.").

For these reasons, plaintiff's motion for judgment on the pleadings (Docket # 13) is **granted**, and the Commissioner's motion for judgment on the pleadings (Docket # 18) is **denied**. The case is remanded for the immediate calculation of benefits.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 24, 2019
Rochester, New York